Edgar Pitts #04616-084
United States Penitentiary ADX
PO Box 8500
Florence Colorado 81226

FILED
JUL 29 2019
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

In The United States District Court
for the Eastern District of
California

Edgar Nelson Pitts )
           Plaintiff )
                     )   Case No. 1:19-CV-01029-GSA (PC)
V.                   )
                     )
(1.) Andre Matevousian )
          Defendant  )
                     )   Civil Rights Complaint
(2.) Frederick Frandle )   By a Prisoner
          Defendant  )
                     )
(3.) Unknown Psychologist )
          Defendant  )

RECEIVED
JUL 29 2019
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

A. Jurisdiction

1. This court has Jurisdiction over this action Pursuant to:
   28 U.S.C. §1331, 5 U.S.C §702
   or 28 U.S.C. §1361

2. Institution where violation occurred: United States Penitentiary Atwater California

## B. Defendants

1. Name of first Defendant: Andre Matevousian, employed as Warden at United States Penitentiary ADX Florence Colorado

2. Name of Second Defendant: Frederick N. Frandle, employed as Hearing Administrator at North Central Regional Office

3. Third Defendant name unknown employed as Psychologist at Central Office Bureau of Prisons

## C. Previous Lawsuits

A. First Prior Lawsuit:
Parties: Edgar Pitts, Plaintiff, Pro Se V. Audrey Gill, F. Schembre
Court and Case #: United States District Court Central District California 98-10118
Result: Dismissed for failure to demonstrate exhaustion of remedies with respect to injunctive sought on Dec 18, 1998

b. Second Prior Lawsuit
Parties: Edgar Pitts, Plaintiff V. Andre Matevousian, et al., Court and Case #: United States District Court for the Eastern District of California # 1:17-CV-01658-DAD-SAB (PC) Result: This action was dismissed due to Plaintiffs failure to state a cognizable claim under Bivens by Judge Dale A. Drozd on 9-17-2018. District Judge Dale A. Drozd stated "To the extent that Plaintiff seeks some form of injunctive or declaratory relief, it may be available in some other action for example one brought under 5 U.S.C. §702, 28 U.S.C. §1361, or 28 U.S.C. §1331". Accordingly Plaintiff is now seeking Relief in this Court.

## D. Cause of Action

### Claim #1: Retaliation

Plaintiff's First Amendment Constitutional Right was violated thus violating Due Process. Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so. See Watison v. Carter 668 F.3d 1108, 1114 (9th Cir. 2012)

### Supporting Facts

After a psychological report was rendered that assessed Plaintiff's almost 5 years in the SHU for a fight that resulted in the death of Plaintiff's cellmate, Plaintiff was denied placement at the ADX on psychological grounds. And after the restrictions that was imposed on Plaintiff, due to the ADX referral was removed, Plaintiff was then allowed to participate in group recreation with absolutely no disruption from Plaintiff; Plaintiff was then given a cellmate with absolutely no adverse incident; Plaintiff was then entrusted to be the orderly for the SHU with absolutely no problem from Plaintiff.

But defendant Andre Matevousian insisted that Plaintiff volunteer to enroll in the Secure Mental Health Stepdown Program or he held in the SHU indefinetly. Defendant Matevousian claimed that the ultimatum came directly from Grand Praire and the Central Office which was revealed to be false. The ultimatum was a pretext to force Plaintiff to volunteer to enroll in the stepdown program. When Plaintiff refused, Defendant Matevousian then tried to force Plaintiff into a new program there at Atwater. The new program was for "Unverified (P.C.) Protective Custody". Plaintiff therefore refused to enter the program.

Defendant Matevousian's insistence that Plaintiff volunteer to enter the unverified P.C. program was to take Plaintiff out of the SHU and beyond the reach of policy that limits confinement in the SHU to one year. But defendant Matevousian's attempt to force Plaintiff into the PC program was itself a violation of policy because Plaintiff was not and is not a PC. Thus attempting to put Plaintiff into a "trick bag".

Plaintiff's case manager Mr. Schwartz didn't have any knowledge of the supposed ultimatum coming from Grand Praire and the Central Office. And this is significant because Mr. Schwartz was the one who was responsible for getting the paper work done to start the transfer process. But after defendant Matevousian instructed Mr. Schwartz to start the transfer process, defendant Matevousian abruptly stopped him from initiating the transfer. Mr. Schwartz said that whenever Plaintiff's name would come up at the SHU meeting, defendant Matevousian would just say that he already talked to the Plaintiff. Mr. Schwartz said that it was clear to him that the defendant Matevousian had no intention to transfer the Plaintiff. He then gave Plaintiff a complaint form.

After plaintiff realized that the defendant Matevousian was violating policy to indefinetly hold Plaintiff in the SHU, Plaintiff was reluctant to pursue administrative remedy; because Plaintiff didn't want to further become the target of defendant Matevousian's reprisal. So Plaintiff was encouraged by staff to file a "sensitive nine" with the Western Region. In the "sensitive nine" plaintiff made them aware of the ultimatum as it was presented to Plaintiff. Plaintiff also asked them to present Plaintiff with policy and law that gave them the authority to hold Plaintiff in the SHU indefinetly; and if no such policy or law existed, Plaintiff requested to be transferred to Victorville United States Penitentiary as recommended by the sentencing Judge.

Plaintiff had a First Amendment right to file the "sensitive nine" to the Western Region to challenge defendant Matevousian's threat to hold Plaintiff in the SHU indefinetly. But as a response to plaintiff's "sensitive nine", defendant Matevousian abused his authority and discretion and undermined the psychological report that precluded the Plaintiff from placement in the ADX, which allowed Plaintiff once again to be referred to the ADX for placement which amounts to retaliation.

From the time that Plaintiff sent the "sensitive nine" to the Western Region until Plaintiff found out that he was again being referred to the ADX was about 3 weeks. Plaintiff first heard about it from the SHU Lieutenant. When Plaintiff was able to see defendant Matevousian, Plaintiff asked him about the rumor. Defendant Matevousian confirmed sarcastically that he did "made some calls, talked to some people and got them to get rid of that psychological

Report".

Plaintiff then explained to defendant Matevousian that Plaintiff already spent about 5 years in the SHU under conditions that was more harsh than the ADX. So plaintiff wasn't getting off easy. And if Plaintiff would have been sent to the ADX 5 years before, Plaintiff would have been getting ready to leave the ADX then.

Defendant Matevousian responded by restating the ultimatum and stated that Plaintiff should have volunteered to enter the program.

After defendant Matevousian's retaliation against Plaintiff, the Psychologist convinced Plaintiff that, instead of suffering in the SHU, that Plaintiff should enroll in the Secure Mental Health Stepdown Program. Defendant Matevousian then came by Plaintiff's cell and said sarcastically that he was pleased to see plaintiff volunteer to enter the Program.

But the psychologist at the Central office whom never met, interviewed nor talked to Plaintiff decided to be persuaded by defendant Matevousian to undermine the Psychological report of the psychologist who interviewed Plaintiff and witnessed Plaintiff's suffering in the SHU for the past 5 years. So the Central Office in violation of the ethics of the American Psychological Association, and in violation of Due Process cleared the way for the Plaintiff to be sent to the ADX.

Due to the retaliation and interference of defendant Matevousian in the diagnostic process of the psychological department, Plaintiff was denied placement in the Secure Mental Health and Stepdown Program; and an ADX hearing was scheduled.

Consequently, the restrictions that was removed when the first ADX Referral was denied due to the Psychological Report, were then Re-imposed. Plaintiff was again placed under 3 man hold; Plaintiff was again restricted from having a cellmate; Plaintiff was again restricted from group recreation; and Plaintiff could no longer be the SHU orderly.

Plaintiff did not incur any new infraction that justified the Re-imposition of the restrictions, nor that justified Plaintiff ADX Placement. Plaintiff didn't refuse to accept a cellmate; Plaintiff didn't refuse to participate in group recreation; Plaintiff didn't refuse to work in the SHU; nor did plaintiff cause any disturbance at any time in the SHU. Plaintiff only conduct at this time was

to file a "Sensitive nine" to the Western Region to challenge Plaintiff's indefinite Housing in the SHU by defendant Matevousian who is the Warden. And for this "Protected Conduct" Plaintiff was retaliated against by the Warden defendant Matevousian.

Plaintiff was briefed by Case Manager Mr. Schwartz about the ADX hearing. Plaintiff made several Request for witnesses. Case Manager Mr. Schwartz offered to be Plaintiff's Staff Representative. And the hearing was scheduled for April 16, 2016 at 9:00 AM central standard time.

The hearing was held as scheduled via tele-conference. The Hearing Administrator was defendant Frederick N. Frandle. And those who provided statements on Plaintiff's behalf were:

#1. Lieutenant P. Hays who said "I've been at USP Atwater 2 1/2 years as SIS Lieutenant, SHU Lieutenant and haven't had any issues during that period, not a single one. There was no intel or concerns raised about Pitts during this time."

#2. Case Manager Matthew Schwartz, stated "I offered to be his Staff Representative and his Case Manager since (2009) And Pitts has been in Special Housing Unit and I'm assuming while pending trial was in a Special Housing type setting, which has been for about 5 years."

#3. Counselor L. Scott submitted a written memo which stated "Inmate Pitts, Edgar 04616-084 has been continuously housed in the Special Housing Unit while at USP Atwater since July 2011. During this time he has been a well behaved inmate and has not caused issues with staff or inmates. Inmate Pitts has not recieved an incident report since 2012. He has been entrusted to be an orderly for the Special Housing Unit. Inmate Pitts has used his time in the Special Housing Unit to try to become a better person. He has taken classes such as anger management, communication skills, and basic cognitive skills. Inmate Pitts continues

to show progress in bettering himself."

At the hearing Plaintiff tried to summarize the events over the past 5 years in the SHU. I stated "Since I've been in the SHU, I've been doing everything possible to program, recreation, and work on bettering myself. When I was denied the first time for the ADX, I was then taken off 3 man hold and they allowed me to have cellies, I was working in the SHU without restraints, going to recreation without incidents; just waiting for a transfer, then all of a sudden I was re-submitted to the ADX"...

In the Control Unit Hearing Administrator's Report at page 2 Section 5, that was prepared by defendant Frederick N. Frandle, stated that "The psychologist provided a memorandum indicating the inmate has no serious mental health issues which would preclude his placement in the ADX Control Unit." In light of the first ADX denial on psychological grounds due to Plaintiff's 5 years confinement in the SHU, Defendant Frederick N. Frandle who was the Hearing Administrator, clearly omitted the diagnostic impression of the psychological report to accommodate Defendant's malevousian retaliation against Plaintiff.

On May 9, 2016 Plaintiff was notified of the approval of Plaintiff's ADX Control Unit Placement. Plaintiff was notified that Plaintiff had 30 days to appeal the decision, "through the Administrative Remedy Program, directly to the office of General Counsel".

In compliance with the notice Plaintiff filed an appeal on May 9, 2016, directly to the office of General Counsel, at the address on the notice.

Plaintiff was then transferred from Atwater United States Penitentiary Atwater, California; and on July 7, 2016 Plaintiff was recieved at the ADX in Florence Colorado.

Plaintiff recieved a notice rejecting his appeal that was dated July 13, 2016. Plaintiff was given 2 reasons for the rejection: "You submitted your request to the wrong level .... you must first file a BP-9". This notice therefore contradicted the May 9, 2016 notice, which directed Plaintiff to appeal the decision, "through Administrative Remedy Program, directly to the office of General Counsel".

To resolve this impediment Plaintiff appealed at every administrative level. Plaintiff filed a BP-9 here at the ADX that

was denied; Plaintiff then filed a BP-10 to the North Central Regional Office that was denied; And Plaintiff filed a BP-11 to the Central Office that was denied. After exhausting the administrative remedy procedure to no avail,

## Supporting Legal Argument

Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so. See Watison v. Carter 668 F.3d 1108, 1114 (9th Cir. 2012)

Here Plaintiff presented sufficient facts to state a First Amendment claim. Plaintiff alleged (1.) that he engaged in protected action: Plaintiff was encouraged by other prison officials to file a Sensitive Nine to challenge Defendant Matevousian threat to hold Plaintiff in the SHU indefinitely if Plaintiff did not volunteer to enroll in the Mental Health Program.

Plaintiff alleged (2.) that Defendant Matevousian took adverse actions against him: Defendant Matevousian re-submitted Plaintiff for ADX placement by undermining the Psychological Report that precluded Plaintiff from ADX placement. Thus prolonging Plaintiff's isolation.

Plaintiff also alleged (3.) a connection between (1.) and (2.): Defendant Matevousian took these adverse actions shortly after, and "in retaliation" for Plaintiff's filing of the "Sensitive Nine" against Defendant Matevousian.

Plaintiff alleged (4.) that the retaliatory actions would have chilled or silenced a person of ordinary firmness by alleging "more than minimal" harms the re-submission for ADX placement that again placed Plaintiff under 3 man hold; Rec Alone; Cell Alone; and placement in the Control Unit at the ADX.

Finally Plaintiff alleged (5.) the absence of a legitimate penological reason for the adverse actions which amounts to an 8th Amendment claim of cruel and unusual punishment.

Plaintiff's first ADX referral was denied on psychological grounds. Plaintiff was then taken off 3 man hold; allowed to have a cellmate; allowed to participate in group recreation; and given an orderly job in the SHU. This demonstrates that didn't pose any

threat to the security of the institution. Because to be given an orderly job Plaintiff had to be given a security clearance.

Therefore, any punishment that is not necessary to maintain order is cruel and unusual and prohibited by the Eight Amendment. See Hancock v. Avery 301 F.Supp. 786 (M.D. Tenn. 1969); Jordan v. Fitzharris 257 F.Supp. 674 (N.D. Cal. 1966); West v. Lamb, 497 F.Supp. 989 (D. Nev. 1980); Milhouse v. Carlson 652 F.2d 371 (3d Cir. 1981)

After all of the sanctions was removed Plaintiff was awaiting transfer to the general population of another penitentiary. But Plaintiff was given an ultimatum by defendant Matevousian: Volunteer to enroll in the Secure Mental Health Program or be held in the SHU indefinetly.

This ultimatum is in direct violation of the proposed Settlement agreement in Cunningham, et al., v. Federal Bureau of Prisons, 12-CV-1570-RPM (D.Colo) which stated that:

"An inmate's refusal to be designated to a secure Residential Mental Health Unit or Medical Center, or a court's denial of a commitment order, is not grounds or justification to house an inmate with a serious mental illness at ADX..."

After Plaintiff's refusal to enroll in the Program, Plaintiff filed a "Sensitive nine" to challenge the defendant's ultimatum. As a consequence Plaintiff was retaliated against and again referred to the ADX.

But the Psychological Report had to be undermined because it precluded Plaintiff from ADX placement. A different Psychologist who never met nor interviewed Plaintiff was therefore solicited to render a Psychological Report to permit Plaintiff's ADX placement. In granting relief on the basis of the conditions of isolated confinement, federal courts have found a violation of the Eight Amendment when the punishment is imposed for an improper purpose. See River v. Fogg, 371 F.Supp. 938 (W.D.N.Y. 1974); Daughtery v. Carlson, 372 F.Supp. 1320 (E.D. Ill. 1974); Clifton v. Robinson, 500 F.Supp. 30 (E.D. Pa. 1980) Defendant's ultimatum was improper. And it was also improper to retaliate against Plaintiff by undermining the Psychological Report that precluded Plaintiff from ADX placement.

In the January 2016 U.S. Department of Justice Report and Recommendations concerning the use of restrictive housing,

the problem of underdiagnosing and misdiagnosing inmates was addressed:

> "The CNA audit concluded that Restrictive housing inmates with Mental health needs were routinely underdiagnosed or misdiagnosed, resulting in insufficient treatment for mentally ill inmates. The CNA audit criticized the Bureau's methods for assessing Mental illness, and repeatedly stated that the Bureau lacked sufficient Psychiatric staff to provide adequate mental health treatment to all inmates who require it..."

Plaintiff's case is a prime example of those "inmates with Mental health needs who were routinely underdiagnosed or misdiagnosed." This problem is even more evident here in Plaintiff's case because Plaintiff was first denied ADX placement on psychological grounds. But as soon as Plaintiff refused the Defendant's ultimatum and filed the "Sensitive nine", Plaintiff was remotely rediagnosed and misdiagnosed to be Psychologically sound for the ADX. Thus rendering the diagnostic process compromised by the politics of the Bureau of Prisons: improper purpose of defendants to retaliate against Plaintiff for filing the "Sensitive nine" grievance against Defendant Matevousian.

If Plaintiff had "extraordinary security needs" then the psychological report that precluded Plaintiff from ADX placement wouldn't have needed to be undermined by the other Psychologist. Because as stated in Cunningham, et al., v. Federal Bureau of Prisons, 12-CV-1570-RPM (D. Colo) "The exclusion of certain inmates with a serious mental illness, as defined in the Bureau's Program statement 5310.16, Treatment and Care of Inmates with Mental Illness, from ADX, except when extraordinary security needs exist"...

Here, no "extraordinary security needs exist" to continue to hold Plaintiff in isolation. This was demonstrated by Prison officials when they provided evidence in Plaintiff's behalf at the ADX hearing. (See statements provided by prison officials in Plaintiff's behalf.)

In light of the statements provided by the prison officials, it is obvious that Plaintiff was not a security threat to the institution. The Courts view the proper purpose of isolated confinement to be the maintenance of order within the institution. See River v. Fogg 371 F. Supp. 938 (W.D. NY. 1974); Daughtery v. Carlson 372 F. Supp. 1320 (E.D. Ill 1974); Clifton v. Robinson, 500 F. Supp. 30 (E.D. PA 1980) Therefore any punishment that is not necessary to maintain order is cruel and unusual and prohibited by the Eight Amendment. See Hancock v. Avery, 301 F. Supp. 786 (M.D. Tenn. 1969); Jordan v. Fitzharris 257 F. Supp. 674 (N.D. Cal. 1966); West v. Lamb 497 F. Supp. 989 (D. Nev. 1980); Milhouse v. Carlson, 652 F.2d 371 (3d Cir. 1981).

Here Plaintiff is being kept in solitary confinement for an improper purpose. A prisoner cannot be placed in isolated confinement because of his or her militant political ideas or his past or threatened litigation. See Wojtczak v. Cuyler 480 F. Supp. 1288 (E.D. PA 1979); Morgan v. LaVallee, 526 F.2d 221 (2d Cir. 1975).

The January 2016 DOJ Report stated "At its worst, and when applied without regard to basic standards of decency, restrictive housing can cause serious, long lasting harm. It is the responsibility of all governments to ensure that this practice is used only as necessary and never as a default solution."

Here, Plaintiff 8 years (and counting) of isolation is unnecessary and is being imposed for an improper purpose. Because after all of the restrictions were removed after Plaintiff's first ADX referral was denied, Plaintiff did not incur any new infraction to justify a new ADX referral placement. Instead Plaintiff demonstrated conduct that was good enough for Plaintiff to have been entrusted with the orderly job in the SHU; given a cellmate; and allowed to participate in group recreation. Thus disproving the need for further isolation here in the control unit at the ADX.

## Relief Sought

Plaintiff seeks injunctive and declaratory relief to be released from the solitary confinement of the ADX.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 23, 2019     /S/ Edgar Pitts
            Date                              Edgar Pitts, Plaintiff

## Proof of Service

I hereby certify that on July 24, 2019, I served a copy of the attached Civil Rights Complaint by placing a copy in a postage paid envelope addressed to the persons hereinafter listed by depositing said envelope in the United States mail at

Clerk of the Court
Room 1501
United States District Court
2500 Tulare Street
Fresno California 93721

Andre Matevousian
Frederick N. Frandle
Unknown Psychologist

I declare under penalty of perjury that the foregoing is true and correct.

/S/ Edgar Pitts
Plaintiff